UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTY NICHOLS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1883-B |
| | § | |
| BAYLOR RESEARCH INSTITUTE, | § | |
| d/b/a BAYLOR SCOTT & WHITE | § | |
| RESEARCH INSTITUTE, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Baylor Research Institute d/b/a Baylor Scott & White Research Institute's (Baylor's) Motion to Dismiss (Doc. 9). For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion.

I.

FACTUAL BACKGROUND

This is a whistleblower case. Plaintiff Christy Nichols alleges that her employer retaliated against her for engaging in "protected activity."[1] Ms. Nichols was employed as an Abdominal Transplant Research Registered Nurse by Defendant Baylor, from January 29, 2018 until March 8, 2019. Doc. 8, First Amend. Compl., ¶¶ 2, 5. Starting in or around June 2018, Ms. Nichols began expressing her concerns to Baylor management about several of its practices. *Id.* ¶¶ 6–7. The First

---

[1]All of Plaintiff's allegations are taken as true for the purposes of the Court's consideration of this motion.

Amended Complaint (Complaint) details various instances where Ms. Nichols reported her concerns to Baylor management. They are as follows:

First, in June 2018, Ms. Nichols met with supervisors and explained that she had discovered double-billing practices in two doctors' studies. *Id.* Specifically, Ms. Nichols "discovered that Baylor was receiving payment from pharmaceutical companies as well as insurance companies, including billing Medicare." *Id.* ¶ 7. Baylor had billed procedures or tests to insurance companies "that [were] not standard of care and not covered in the Medicare-required Coverage Analysis." *Id.* Baylor would then receive payment from the pharmaceutical companies. *Id.*

Second, in November and December of 2018, Ms. Nichols reported to Baylor that it "was creating medical records without consent and using Social Security Numbers in violation of IRS requirements," and "Baylor was not clearly disclosing to [test] subjects nor adequately differentiating between non-taxable reimbursements of expenses and taxable compensation to be reported on IRS 1099-MISC forms." *Id.* ¶ 14. As a result, nontaxable reimbursements were included in the 1099 forms to subjects. *Id.* In doing so, Baylor failed to follow federal law, which was a condition for "receiving federal grants for its research programs . . . ." *Id.* Baylor was also required to "immediately notify the National Institutes of Health (NIH) of noncompliance with federal law." *Id.*

Third, in December 2018, Ms. Nichols reported to Baylor that the current storage temperature was minus 80 degrees Fahrenheit, which was lower than the minus 20 degrees protocol. Baylor's receipt of federal funds was conditioned on an agreement to store specimens at minus 20 degrees, and therefore "the release of these specimens to the NIH would result in false information being provided to the NIH." *Id.* ¶¶ 11, 17.

Fourth, again in December 2018, Ms. Nichols reported that she and a co-worker had "discovered a pattern of negligence and mismanagement" at Baylor. *Id.* ¶ 25. Specifically, one doctor had been forced to submit incomplete and inaccurate information to Baylor's Institutional Review Board (IRB); physicians responsible for a study were not consulted about their opinion "and direction"; and patients were not given proper notice of the risks of a study. *Id.* The Complaint notes how "[t]hese actions violated requirements to comply with Federal Drug Administration (FDA) and NIH rules with respect to study applications and compliance, which were requirements for the receipt of federal funds." *Id.* Fifth, in January 2019, Ms. Nichols spoke to human resources about her "concerns regarding study conduct and that her previous complaints made to managerial staff had not been addressed." *Id.* ¶ 30. The Complaint alleges that the "studies were . . . not in compliance with requirements to meet NIH requirements for the receipt of federal grants and/or would result in improper Medicare billing." *Id.* ¶ 29.

Sixth, in February 2019, Ms. Nichols again voiced her concerns about the double-billing procedures through emails and during meetings. *Id.* ¶ 33.

Seventh, again in February 2019, presumably dissatisfied with Baylor's response to her complaints, Ms. Nichols emailed the Office of Human Research Protection (OHRP) and the FDA to report her concerns about pharmaceutical and NIH-funded studies. *Id.* ¶ 34.

Eighth, later that February, Ms. Nichols notified Baylor of her report to the FDA. *Id.* ¶ 35. This began a long process by which Baylor asked Ms. Nichols about her report, and subsequently put her employment on "pause." *Id.* ¶¶ 36–37. Shortly after a meeting between Baylor and Ms. Nichols on March 5, 2019, Ms. Nichols was notified that "it was [Baylor's] opinion that [Ms. Nichols] would continue to have concerns if she were to return to work, and management did not feel that [Ms.

Nichols] would be successful if she returned." *Id.* ¶¶ 48–52. Ms. Nichols was offered a severance package, which she did not sign. *Id.* ¶ 54. Ms. Nichols was subsequently terminated. *Id.* ¶ 62.

Ms. Nichols then brought this civil action, alleging that her discharge was an unlawful retaliation in violation of 31 U.S.C. § 3730(h)(1). *Id.* at 11–12. Baylor then filed a motion to dismiss (Doc. 9). All briefing has been filed in relation to this motion, and the motion is now ripe for review.

## II.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." *Id.* 12(b)(6). To survive a 12(b)(6) motion, "enough facts to state a claim to relief that is plausible on its face" must be pled. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *J&J Sports Prods., Inc. v. Live Oak Cnty. Post No. 6119 Veterans of Foreign Wars*, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007)).

The Fifth Circuit has held that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925,

931 (5th Cir. 1995) (internal citation omitted). Essentially, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal citation omitted).

## III.

## ANALYSIS

Under the False Claims Act (FCA), a private person can sue any person who has submitted false claims for payment to the United States Government. 31 U.S.C. §§ 3729(a), 3730(b)(1). The suit is a *qui tam* action in which "[t]he suit is brought in the Government's name, and the Government has the exclusive opportunity to intervene." *United States ex rel. Johnson v. Kaner Med. Grp., P.A.*, 641 F. App'x 391, 393 (5th Cir. 2016) (per curiam) (citing 31 U.S.C. § 3730(b)(1), (4)–(5)).

The FCA protects these private whistleblowers who bring *qui tam* actions. The act gives a private cause of action to a whistleblower employee who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms of conditions of employment" in response to their acts done "in furtherance of an action under this section or other efforts to stop 1 or more violations of" the FCA. 31 U.S.C. § 3730(h)(1). This cause of action "is intended to encourage those with knowledge of fraud to come forward." *Roberston v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994).

"To establish a claim under § 3730(h), a party must show (1) that she was engaged in protected activity with respect to the False Claims Act; (2) that her employer knew she was engaged in protected activity; and (3) that she was discharged because she was engaged in protected activity."

*Thomas v. ITT Educ. Serv., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (per curiam) (citing *Robertson*, 32 F.3d at 951).

As a threshold matter, Ms. Nichols argues that at the motion-to- dismiss stage, she need not plead these three elements. Doc. 12, Pl.'s Opp. to Def.'s Mot. to Dismiss and Br. in Supp. ("Pl.'s Br."), 3 n.1. However, this Court has previously required that a plaintiff adequately plead all three elements at the motion-to-dismiss stage. *See Jamison v. Fluor Fed. Sols., LLC*, 2017 WL 3215289, at *5 (N.D. Tex. July 28, 2017) (Boyle, J.). Additionally, *United States ex. rel. George v. Boston Scientific Corporation*, a case upon which Ms. Nichols heavily relies, analyzed all three elements of a retaliation claim at this stage of litigation. 864 F. Supp. 2d 597, 603–04 (S.D. Tex. 2012).

Thus, the Court will consider whether Ms. Nichols adequately pled all three elements of an FCA retaliation claim. In brief, this Court finds that, as pled, Ms. Nichols' internal complaints concerning the double billing, were protected activity of which Baylor had notice, while her other complaints were not protected activity.

A.   *Protected Activity*

   1.   What is Protected Activity?

First, Ms. Nichols must plead that she engaged in protected activity. *Kaner*, 641 F. App'x at 393. In 2009, Congress amended the FCA to expand the scope of protected activities under the act. *See Jamison*, 2017 WL 3215289, at *5 (citing The Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111–21, § 4(d), 123 Stat. 1617, 1624–25 (2009)). The act now protects all "lawful acts done . . . in furtherance of an action under this section *or other efforts to stop 1 or more violations of this subchapter*." 31 U.S.C. § 3730(h) (emphasis added).

Although the Fifth Circuit has yet to publish an opinion interpreting the new language, it "has confirmed the overarching principle that '[a] protected activity is one motivated by a concern regarding fraud against the government.'" *United States ex rel. Johnson v. Raytheon Co.*, 395 F. Supp. 3d 791, 798 (N.D. Tex. 2019) (quoting *Thomas*, 517 F. App'x at 262). Therefore, "an actual *qui tam* action is not required in order for an activity to be deemed 'protected.'" *Raytheon Co.*, 395 F. Supp. 3d at 797 (citing *United States ex rel. Patton v. Shaw Servs., LLC*, 418 F. App'x 366, 371 n.5 (5th Cir. 2011) (per curiam)). Instead, the key inquiry is whether "the [internal] complaints [to an employer] raise concerns about fraud" committed against the government. *Raytheon Co.*, 395 F. Supp. 3d at 798 (*George*, 864 F. Supp. 2d at 605).

    2.    <u>Did Ms. Nichols sufficiently plead that she engaged in protected activity?</u>

          a.    *Internal Complaints Concerning Statutory Noncompliance*

The Court concludes that the internal reports concerning the alleged statutory noncompliance do not constitute protected activity under the FCA. Ms. Nichols fails to adequately plead that her motivation for reporting the alleged noncompliance with federal statutory funding requirements was a concern that the noncompliance was defrauding the government.

Ms. Nichols notes that her complaint alleges that Baylor was "required to follow all federal laws as a condition to receiving federal grants." Doc. 12, Pl.'s Br., 5. She also points out that she does this in other parts of her complaint: for example, she explains that she "pled that the receipt of federal funds was conditioned on an agreement to keep the specimens at a certain temperature, and that reporting results of studies after such improper storage was fraudulent." *Id.* at 6; *see also id.* (citing Doc. 8, First Am. Compl., ¶ 25). With respect to the allegations that Baylor was not following NIH protocol yet was still receiving federal funds, she "objected to Baylor." Doc. 12, Pl.'s Br., 6. Ms.

Nichols contends that such allegations demonstrate that she was concerned that Baylor was "submitting fraudulent claims for payment to the government." *Id.* at 5.

To be sure, the basis for an actual FCA claim can be a false certification of compliance with federal requirements for funding. *See Westbrook*, 751 F.3d at 365.[1] Yet, for a retaliation claim based on statutory noncompliance to be proper, a plaintiff needs to show that her decision to report the noncomplaince *itself* was motivated by a concern that the noncompliance was defrauding the government. *See Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 68 (D.C. Cir. 2008) (explaining how the plaintiff's "investigation was into mere regulatory noncompliance and did not concern false or fraudulent claims as it must to support a retaliation claim . . . .") (internal quotations and citations omitted); *see also United States ex rel. Ligai v. ETS–Lindgren*, 2014 WL 4649885, at *16 (noting that allegations that an employee voiced concerns about violations of a government contract "are insufficient unless the employee specifically referred to fraudulent claims for payment for those services . . . .").

Ms. Nichols fails to allege that the reason she reported the statutory noncompliance was that it constituted fraud against the federal government. Ms. Nichols contends that she *did* plead in her complaint (1) that she lodged her internal complaints after learning that Baylor was still receiving funds after such noncompliance, and (2) that she characterized the noncompliance as fraudulent in her internal complaints to Baylor. *See* Doc. 12, Pl.'s Br., 6–7.

---

[1] In both its original brief and its reply, Baylor argues that the complaint should be dismissed because Ms. Nichols does not sufficiently plead that statutory compliance was material to the government's decision to grant Baylor federal funds. *See* Doc. 9, Def.'s Br., 12–13; Doc. 13, Def.'s Reply, 6. Although materiality is needed to establish a *qui tam* claim, "[Baylor's] materiality argument does not support dismissal of a retaliation claim, however, because conduct may be protected regardless whether it leads to an actual *qui tam* action." *Raytheon Co.*, 395 F. Supp. 3d at 797.

Notably, however, Ms. Nichols does not cite to any paragraph in the Complaint where she alleges that fraud against the government was her motivation. Ms. Nichols cites to paragraph 17 of her complaint as establishing that she was concerned that Baylor had submitted fraudulent claims for payment to the government. Doc. 12, Pl.'s Br., 6. But this paragraph demonstrates the overall deficiencies of her statutory noncompliance internal complaints. Although that paragraph states that "false information [was] provided to the NIH," Doc. 8, Pl.'s First Am. Compl. ¶ 17, Ms. Nichols does not allege that this observation was her motivation in making her internal complaints. As Baylor points out, Ms. Nichols "does not allege that she reported" such concerns when she made her internal complaints to Baylor. Doc. 9, Def.'s Br., 9. Instead, as currently pled, these types of observations, which are common throughout the Complaint, are "after-the-fact conclusion[s]" about the alleged violations Ms. Nichols reported. Doc. 9, Def.'s Br., 15. In *Raytheon Co.*, for example, the court found that simply reporting violations, without more, is not the same as attempting to expose fraud, and therefore did not constitute protected activity. 395 F. Supp. 3d at 798. Such observations are not enough to show that she was "motivated by a concern regarding fraud against the government." *Id.*

As currently alleged, the internal complaints concerning statutory noncompliance do not constitute protected activity within the meaning of the FCA. Therefore, the retaliation claim, insofar as it relies on the internal complaints alleging statutory noncompliance, must be dismissed.

      b.      *The FDA Report*

Whether the relevant activity is the FDA report itself, or instead notifying Baylor of the FDA report, Ms. Nichols does not adequately plead that this was a protected activity under the FCA. Like

the internal complaints discussed above, Ms. Nichols fails to plead that her FDA report was motivated by a concern that Baylor was defrauding the government.

In the Complaint, Ms. Nichols alleges that she emailed Baylor that she had reported "the studies to the FDA." Doc. 8, First Am. Compl., ¶ 35. The "studies" included "studies funded by the NIH, some of which were financed with federal funds . . . ." *Id.* ¶ 34. But, as discussed above, merely observing that such studies were funded by the federal government—and that there was statutory noncompliance—does not show that Ms. Nichols raised, or was motivated by, a concern about fraud against the government. The same, then, must be said about the FDA report concerning these same studies.[1]

As currently pled, Ms. Nichols's reports to the FDA do not constitute protected activity. Therefore, the retaliation claim, insofar as it relies on the FDA report, must be dismissed.

### c. Medicare Double-Billing

The Court concludes that Ms. Nichols has sufficiently pled that she was engaged in protected activity in reporting the double-billing practices to Baylor management. *See* Doc. 8, First Am. Compl., ¶ 7.

Baylor argues that Ms. Nichols "does not contend that Baylor submitted fraudulent claims for payment to the government; rather, she contends Baylor billed a procedure or test to an insurance company 'that was not standard of care.'" Doc. 9, Def.'s Br., 9 (citing Doc. 8, First Am. Compl., ¶ 9). The Court disagrees with Baylor's reading of the Complaint. Although there is a standard-of-care allegation in the Complaint, the Complaint also alleges that Baylor "was receiving payment from pharmaceutical companies as well as insurance companies, *including* billing Medicare."

---

[1] The complaint alleges only that the FDA report related to statutory noncompliance, not double billing. Doc. 8, First Am. Compl., ¶¶ 34–35.

Doc. 8, First Am. Compl., ¶ 7 (emphasis added). Ms. Nichols also alleges that she informed Baylor management of this allegation. *Id.* ¶¶ 7, 10, 33. In other words, Ms. Nichols alleges that she told Baylor that it was receiving payment from Medicare while also receiving payment from pharmaceutical and insurance companies for the same claims. Double billing Medicare is inherently fraudulent activity. *See Farnsworth v. HCA, Inc.*, 2015 WL 5234640, at *7 (M.D. Fl. Sept. 8, 2015) (concluding that "double billing of Medicare and Medicaid" results in "the submission of false claims to the government"); *see also Kaner*, 641 F. App'x at 395 ("[I]n directly billing Medicare-Medicaid patients, KMG was not presenting any false claim for payment to the Government. Instead, it was seeking payment from the patients themselves.").

Baylor actually relies on *Kaner* to argue that reporting improper Medicare billing is not protected activity. *See* Doc. 9, Def.'s Br., 10 (citing 641 F. App'x at 395). But, as just alluded to, the Fifth Circuit in *Kaner* determined that alleging improper direct billing of Medicare-Medicaid *patients* did not concern fraud against the government and was therefore not a protected activity under the FCA. 641 F. App'x at 395. Here, however, Ms. Nichols's activity concerned reporting alleged improper billing of Medicare itself. Doc. 8, First Am. Compl., ¶ 7. Additionally, *Kaner* involved a motion for summary judgment, not a motion to dismiss. 641 F. App'x at 395. This Court need only determine whether the Complaint states a plausible claim for relief, not whether there is a genuine dispute of material fact. *See Iqbal*, 556 U.S. at 678. And because Ms. Nichols specifically alleges that she told Baylor that she discovered Baylor improperly billing Medicare, she has sufficiently pled that she was motivated by a concern about fraud against the government. *See United States ex rel. George v. Fresenius Medical Care Holdings, Inc.*, 2016 WL 5361666, at *19 (N.D. Ala. Sept. 26, 2016)

(finding that an employee engaged in protected activity when the employee reported concerns about, *inter alia*, Medicare double-billing practices).

For the reasons stated above, Ms. Nichols has sufficiently pled that her activity in reporting the alleged double-billing practices was protected conduct.

B. *Notice*

1. <u>When Does An Employer Receive Sufficient Notice of Protected Activity?</u>

Next, Ms. Nichols must plead that Baylor knew she was engaging in protected activity. *Kaner*, 641 F. App'x at 393. A plaintiff need not explicitly notify an employer that she is engaging in protected activity in order for the employer to have received proper notice. Instead, "it may also be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility." *George*, 864 F. Supp. 2d at 608 (quoting *United States ex Rel. Williams v. Martin–Baker Aircraft Co.*, 389 F. 3d 1251, 1262 (D.C. Cir. 2004)).

2. <u>Did Ms. Nichols sufficiently plead that Baylor had notice of her protected activity?</u>

   a. *The Internal Complaints about Statutory Noncompliance and the FDA Report*

The Court has already found that the internal complaints concerning statutory noncompliance and the FDA report do not constitute protected activities. This, in of itself, is a proper basis for dismissal of a retaliation claim based on these complaints. However, the Court concludes that even if the reports were protected activities, Baylor did not receive proper notice of their protected status.

The parties dispute the legal significance of the fact that these internal complaints never mention the words "fraud" or "illegal." To Baylor, there is no way it could have received notice of protected activity without Ms. Nichols mentioning those words. Doc. 13, Def.'s Resp., 6.

But that cannot be true. Baylor need only be put on notice that litigation is a "reasonable possibility." *George*, 864 F. Supp. 2d at 608 (internal quotations omitted). A reasonableness standard is inherently flexible and dependent on the circumstances; thus, "no magic words—such as illegal or unlawful—are necessary to place the employer on notice of protected activity." *Jamison*, 2017 WL 3215289, at *9 (quoting *George*, 864 F. Supp. 2d at 608 (quoting *Fauslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 484 (7th Cir. 2004)).

On the other hand, Ms. Nichols's proposed notice standard is too lax. She claims that there is "caselaw holding that the notice prong is satisfied if the employee makes a direct complaint to his supervisors." Doc. 12, Pl.'s Br., 9. She thus believes her repeated concerns to her supervisors regarding Baylor's practices provided Baylor with sufficient notice. *Id.* Yet, Ms. Nichols does not cite to any case law when making this claim. She seems, however, to have conflated the first two elements of an FCA retaliation claim in making this assertion. In *George*, upon which Ms. Nichols heavily relies, the court does indeed say that internal complaints can be protected activity for which an employer has notice. 864 F. Supp. 2d at 608. However, the court went on to explain that "if an employee wants to impute knowledge to the employer for purposes of the second prong of the analysis, he must specifically tell the employer that he is concerned about possible fraud." *Id.* (alterations and internal quotations omitted) (quoting *United States ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 105 (D. Conn. 2006)). It is only then when an internal complaint provides an employer sufficient notice of protected activity.

Thus, there must be something the employee says or does that gives the employer a reasonable basis for believing that litigation is a possibility. And that reasonable basis is not present in Ms. Nichols's complaint. "It is insufficient for the relator [the employee] to show that the employer

knew that the whistleblower had concerns about compliance with the law; she must show that the employer was on notice of the distinct possibility of *qui tam* litigation." *Jamison*, 2017 WL 3215289, at *9 (quoting *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 748 F. Supp. 2d 95, 104 (W.D. Tex. 2010)). Yet, as explained above, Ms. Nichols only mentions how Baylor's alleged misconduct happened to have violated statutory requirements. Moreover, Ms. Nichols alleges that she told Baylor of her "intent" in filing the FDA report, Doc. 12, Pl.'s Br., 9, but she does not elaborate on what this intent was. Because that "intent" needs to be uncovering fraud against the government, that Ms. Nichols filed a report with a governmental entity does not provide sufficient notice on its own. Doc. 12, Pl.'s Br., 9–10.

Additionally, it would have perhaps been unreasonable for Baylor to expect litigation to stem from these specific complaints.[1] When reporting her FDA report to Baylor, Ms. Nichols stated that overall, "her concerns were based in patient safety." Doc. 8, First Am. Compl., ¶ 36. By explicitly explaining the basis of her concerns, Ms. Nichols "made it *un*reasonable to expect something more in the form of *qui tam* litigation." *Jamison*, 2017 WL 3215289, at *10 (emphasis in original) (granting motion to dismiss in part because plaintiff's express request for an internal investigation made it unreasonable for employer to expect litigation). By putting Baylor on notice of what her concern was, Ms. Nichols in effect put Baylor on notice of what her concern was *not*: fraud against the government.

---

[1] Baylor also contends that it would not have been reasonable for it to believe litigation was a possibility because Ms. Nichols's "job duties included broad regulatory and compliance oversight." Doc. 13, Def.'s Rep., 7. There is case law that supports this assertion. *See Sealed Appellant I v. Sealed Appellant I*, 156 F. App'x 630, 634–35 (5th Cir. 2005). However, although Baylor contends that Ms. Nichols did not dispute Baylor's contention that Ms. Nichols's job included this oversight, Doc. 13, Def.'s Rep., 7, Ms. Nichols does not allege in her Complaint that such oversight was included in her job duties. Even if it were in her Complaint, this alone does not sway the Court one way or the other.

As currently pled, the complaint does not demonstrate how Baylor would have notice that Ms. Nichols was engaged in protected activity when she reported her concerns about statutory noncompliance, both internally and through the FDA. Therefore, the retaliation claim resulting from these concerns must be dismissed.

    b.  *Medicare Double-Billing*

The Court has already determined that Ms. Nichols's reports regarding Medicare double billing was protected activity. Additionally, the Court concludes that Ms. Nichols has sufficiently pled that Baylor had adequate notice of this protected activity.

As discussed immediately above, for Baylor to have adequate notice, Ms. Nichols does not need to allege that she said magic words such as "illegal" or "fraud" when she made her internal reports. Still, she must allege that she specifically told Baylor that she was concerned about fraud, one way or another. *See George*, 864 F. Supp. 2d at 608 (finding notice from the circumstances even when the plaintiff did not specifically state "fraud" in her activity).

Taking the allegations in the Complaint as true, Ms. Nichols told Baylor that she had discovered double-billing practices involving Medicare. Doc. 8, Pl.'s Br., ¶ 7. She then contacted the billing and legal departments "several times" regarding the issue. *Id.* ¶ 9. She also repeated her concerns to management. *Id.* ¶ 33. This case is thus similar to *George*, where notice of protected activity was pled when the plaintiff "repeated" her concerns to her manager, and the concerns questioned the legality of the defendant's practice. *George*, 864 F. Supp. 2d at 608–09. Moreover, when that concern is specifically about Medicare double billing—which inherently involves fraudulent claims for payment to the government—it is a reasonable inference that Baylor was on notice that Ms. Nichols was concerned about fraud against the government. *See Soni v. Bos. Med.*

*Ctr. Corp.* 683 F. Supp. 2d 74, 98 (D. Mass. 2009) (finding that the notice prong was sufficiently pled when the "allegations support[ed] an inference that the defendants submitted excessive or otherwise improper claims to the government and that [plaintiff] notified hospital supervisors of this conduct"). As this Court has repeated throughout this order, the FCA is not so rigid as to require a dismissal of a claim merely because a plaintiff did not say the words "fraud" or "illegal."

This conclusion does not change because Ms. Nichols eventually explained that many of her claims were based in patient safety, as discussed above. Doc. 8, First Am. Compl., ¶ 36. First, those comments were made in the context of the FDA report. Second, unlike noncompliance with statutory standards alone, Medicare double-billing necessarily involves fraudulent claims for payment to the government. Ms. Nichols's comment, then, does not rebut the plausible conclusion that Baylor had notice that Ms. Nichols was engaged in protected activity when she reported her concerns about double-billing.

Therefore, Ms. Nichols has pled notice for her internal complaints regarding double-billing.

C.     *Causation*

Ms. Nichols must also plead that she was discharged because of her protected conduct. *Kaner*, 641 F. App'x at 393. Baylor, however, does not rely on this element in its motion to dismiss. Therefore, for the purposes of this motion, the Court considers this element satisfied as to all of Ms. Nichols's concerns alleged in her Complaint.

## IV.
## CONCLUSION

To summarize, the Court concludes that Ms. Nichols did not adequately plead either the protected activity or notice elements for her claims related to (1) her internal complaints for

statutory noncompliance and (2) the FDA report. Therefore, to the extent that Ms. Nichols's retaliation claim is predicated on those complaints, Defendant's motion (Doc. 9) is **GRANTED.** She did, however, adequately plead both of those elements elements for her internal complaint regarding Medicare double-billing. And because Baylor does not argue that the third element of her retaliation claim was insufficiently pled, the motion (Doc. 9) is **DENIED** to the extent that her claim rests on the Medicare double-billing internal complaint.

Baylor asks this Court to dismiss the claim with prejudice. Doc. 9, Def.'s Br., 15; Doc. 13; Def.'s Resp., 7–8. However, the Fifth Circuit has stated with approval that "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . ." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). And "[w]hile [Ms. Nichols] has already amended h[er] Complaint once, 'this is the first time the Court has addressed whether [her] pleadings state a claim on which relief can be granted.'" *Jamison*, 2017 WL 3215289, at *11 (citing *In re American Airlines*, 370 F. Supp. 2d 552, 568 (N.D. Tex. 2005)).

Thus, for the claims that the Court has dismissed, the Court finds it appropriate to dismiss these claims without prejudice "to ensure that the Court's final decision is based not on the sufficiency of h[er] pleadings but the merits of h[er] claims." *Jamison*, 2017 WL 3215289, at *11. (citation omitted).

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss (Doc. 9). To the extent that the Court grants the motion, it is **WITHOUT prejudice.** The Court further **GRANTS** Plaintiff leave to file a second amended Complaint by **December 10, 2019.** If Plaintiff fails to amend her Complaint by **December 10, 2019**, then her

claims against Defendant concerning statutory noncompliance and the FDA report will be **DISMISSED with prejudice.**

SO ORDERED.

SIGNED: November 19, 2019.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE