UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTY NICHOLS, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1883-B |
| | § | |
| BAYLOR RESEARCH INSTITUTE, | § | |
| d/b/a BAYLOR SCOTT & WHITE | § | |
| RESEARCH INSTITUTE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Baylor Research Institute d/b/a Baylor Scott & White

Research Institute's (Baylor's) Second Motion to Dismiss (Doc. 16). For the reasons that follow, the

Court **GRANTS in part** and **DENIES in part** Baylor's motion. To the extent that the Court grants

the motion, it is **WITH PREJUDICE**. To summarize, the Court finds that Ms. Nichols has stated

a claim based on the: (1) June 2018 and February 2019 double-billing reports; (2) February 2019

FDA report; and (3) December 2018 report regarding the temperature of specimens.

## I.

## BACKGROUND

A.     *Factual Background*

This is the second order on a motion to dismiss in this whistleblower case. *See* Doc. 14, Mem.

Op. & Order. Plaintiff Christy Nichols alleges that her employer, Baylor, retaliated against her for

reporting fraudulent conduct at the workplace.[1] Doc. 15, Second Am. Compl. (SAC), ¶¶ 61–68. Ms. Nichols was employed as an Abdominal Transplant Research Registered Nurse by Baylor, from January 29, 2018 until March 8, 2019. *Id.* ¶ 5. Starting in June of 2018, Ms. Nichols began expressing her concerns to Baylor management about several of its practices. *Id.* ¶¶ 6–7. The Second Amended Complaint details various instances when Ms. Nichols reported her concerns to Baylor management. They are as follows:

First, in June of 2018, Ms. Nichols met with supervisors and explained that she had discovered double-billing practices in two different doctors' studies. *Id.* Specifically, Ms. Nichols "discovered that Baylor was receiving payment from pharmaceutical companies as well as insurance companies, including billing Medicare." *Id.* ¶ 7. Baylor had billed procedures or tests to insurance companies "that [were] not standard of care and not covered in the Medicare-required Coverage Analysis." *Id.* Baylor would then receive payment from the pharmaceutical companies. *Id.*

Second, in November and December of 2018, Ms. Nichols reported to Baylor that it "was creating medical records without consent and using Social Security Numbers in violation of IRS requirements," because "Baylor was not clearly disclosing to [test] subjects nor adequately differentiating between non-taxable reimbursements of expenses and taxable compensation to be reported on IRS 1099-MISC forms." *Id.* ¶ 14. Ms. Nichols alleges that this violated federal law. *Id.* As a result, nontaxable reimbursements were included in the 1099 forms to subjects, also in violation of federal law. *Id.* Following federal law, Ms. Nichols explains, which was a condition for "receiving federal grants for [Baylor's] research programs . . . ." *Id.* Baylor was also required by federal law to

---

[1] Plaintiff's allegations are taken as true for the purposes of the Court's consideration of this motion.

"immediately notify the National Institutes of Health ("NIH") of noncompliance with any federal law." *Id.*

Third, in December of 2018, Ms. Nichols reported to Baylor that the current storage temperature for specimens was minus 80 degrees Fahrenheit, which was lower than the minus 20 degrees protocol. *Id.* ¶ 17. Baylor was required by law to notify the government if it did not follow these protocols, as this could "skew[] research results." *Id.* "The NIH had the ability to not pay Baylor due to such deviations," according to Ms. Nichols. *Id.* Ms. Nichols explains that she reported this concern because she felt "that Baylor's noncompliance was defrauding the government . . . ." *Id.* ¶ 18. Ms. Nichols told Baylor personnel that Baylor was defrauding the government by deviating from the minus 20 degrees protocol. *Id.*

Fourth, again in December of 2018, Ms. Nichols reported that she and a co-worker had "discovered a pattern of negligence and mismanagement" at Baylor. *Id.* ¶ 26. Specifically, one doctor "had been forced to submit incomplete and inaccurate information to Baylor's Institutional Review Board ("IRB")"; physicians responsible for a study were not consulted about their "opinion and direction"; and patients were not given proper notice of the risks of a study. *Id.* The Second Amended Complaint notes how "[t]hese actions violated requirements to comply with [Federal Drug Administration ("FDA")] and NIH rules with respect to study applications and compliance, which were requirements for the receipt of federal grant funds." *Id.* Ms. Nichols explains that she "report[ed] these federal rule violations out of concern that Baylor's noncompliance with FDA and NIH rules was defrauding the government and jeopardizing patient safety." *Id.*

Fifth, in January of 2019, Ms. Nichols spoke to human resources about her "concerns regarding study conduct and the fact that her previous complaints made to managerial staff had not

been addressed." *Id.* ¶ 31. The Second Amended Complaint alleges that the "studies continued to have significant deficiencies" and were therefore "not in compliance with requirements to meet NIH requirements for the receipt of federal grants and/or would result in improper Medicare billing." *Id.* ¶ 30.

Sixth, in February of 2019, Ms. Nichols again voiced her concerns about the double-billing procedures through emails to, and during meetings with, Baylor personnel. *Id.* ¶ 34.

Seventh, in late February of 2019, Ms. Nichols repeated her concern to Baylor about the pattern of negligence and mismanagement that led to misinformation being reported to Baylor's IRB. *Id.* ¶ 33.

Eighth, again in February of 2019, presumably dissatisfied with Baylor's response to her complaints, Ms. Nichols emailed the Office of Human Research Protection (OHRP) and the FDA to report her concerns about pharmaceutical and NIH-funded studies. *Id.* ¶ 35. Ms. Nichols explains that she reported these concerns because she believed that Baylor was "defrauding the government and jeopardizing patient safety." *Id.*

Ninth, later that February, Ms. Nichols notified Baylor of her report to the FDA. *Id.* ¶ 36. Ms. Nichols alleges that in this email, she told Baylor management that she had notified the FDA because she believed Baylor was defrauding the government. *Id.*

This began a long process by which Baylor asked Ms. Nichols about her FDA report, and subsequently put her employment on "pause." *Id.* ¶¶ 37–38. Shortly after a meeting between Baylor and Ms. Nichols on March 5, 2019, Ms. Nichols was notified that "it was [Baylor's] opinion that [Ms. Nichols] would continue to have concerns if she were to return to work, and management did not feel that [Ms. Nichols] would be successful if she returned." *Id.* ¶¶ 42–56. Ms. Nichols was offered

a severance package, which she did not sign. *Id.* ¶ 56. Ms. Nichols was subsequently terminated. *Id.* ¶ 59.

Ms. Nichols then brought this civil action, alleging that her discharge was an unlawful retaliation in violation of 31 U.S.C. § 3730(h)(1), the anti-retaliation provision of the False Claims Act (FCA). *Id.* at 12–13.

B.     *Procedural Background*

In its first order, the Court dismissed all of Ms. Nichols's claims of wrongful retaliation based on "(1) her internal complaints for statutory noncompliance and (2) the FDA report." Doc. 14, Mem. Op. & Order, 16–17. The Court dismissed these claims because Ms. Nichols failed to plead the first two elements of an FCA retaliation claim: that she (1) engaged in protected activity for which (2) Baylor had notice. *Id.* at 9–10, 15. The Court granted Ms. Nichols leave to file a second amended complaint. *Id.* at 17.

The Court, however, found that Ms. Nichols did sufficiently allege the first two elements of her wrongful retaliation claim based on the double-billing reports. *Id.* at 12, 15–16. And because Baylor did not argue that Ms. Nichols failed to adequately plead the third element of an FCA retaliation claim, the Court noted that when analyzing the first motion to dismiss, it would "consider[] th[e] [third] element satisfied as to all of Ms. Nichols's concerns alleged in her Complaint." *Id.* at 16. Therefore, the Court denied Baylor's motion to dismiss Ms. Nichols's claim premised on the double-billing report. *Id.* at 17.

Ms. Nichols timely filed a second amended complaint. *See* Doc. 15, SAC. Baylor now brings this motion to dismiss Ms. Nichols's Second Amended Complaint. Doc. 16, Def.'s Mot. All briefing has been filed, and the motion is now ripe for review.

# II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." *Id.* 12(b)(6). To survive a 12(b)(6) motion, "enough facts to state a claim to relief that is plausible on its face" must be pled. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *J&J Sports Prods., Inc. v. Live Oak Cnty. Post No. 6119 Veterans of Foreign Wars*, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007)).

The Fifth Circuit has held that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (internal citation omitted). Essentially, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal citation omitted).

# III.

## ANALYSIS

Under the FCA, a private person can sue any person who has submitted false claims for payment to the United States Government. 31 U.S.C. §§ 3729(a), 3730(b)(1). The suit is a *qui tam* action in which "[t]he suit is brought in the Government's name, and the Government has the exclusive opportunity to intervene." *United States ex rel. Johnson v. Kaner Med. Grp., P.A.*, 641 F. App'x 391, 393 (5th Cir. 2016) (per curiam) (citing 31 U.S.C. § 3730(b)(1), (4)–(5)).

The FCA protects these private whistleblowers who bring *qui tam* actions. The act gives a private cause of action to a whistleblower—i.e., an employee who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" in response to their lawful acts done "in furtherance of an action under this section or other efforts to stop 1 or more violations of" the FCA. 31 U.S.C. § 3730(h)(1). This cause of action "is intended to encourage those with knowledge of fraud to come forward." *Roberston v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994).

To bring a successful § 3730(h) action, "a party must show (1) that she was engaged in protected activity with respect to the [FCA]; (2) that her employer knew she was engaged in protected activity; and (3) that she was discharged because she was engaged in protected activity." *Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (per curiam) (citing *Robertson*, 32 F.3d at 951).

First, the Court reiterates a point it made in its first order. Ms. Nichols repeats her argument made in response to Baylor's first motion to dismiss that she does not need to plead these three elements at the motion-to-dismiss stage. *See* Doc. 17, Pl.'s Resp., 3 n.1. However, this Court

specifically rejected this contention in the first order. *See* Doc. 14, Mem. Op. & Order, 6 (rejecting the same argument). And as Baylor has pointed out, see Doc. 18, Def.'s Reply, 2, the Fifth Circuit recently held the same. *See Jamison v. Fluor Fed. Sols., LLC*, 787 F. App'x 241, 242 (5th Cir. 2019) (per curiam) ("Under the whistleblower provision of the FCA, Appellant was required to show that he engaged in protected activity, that Appellee knew he was engaged in protected activity, and that he was discharged because of it.") (citation omitted). Thus, the Court will now consider whether Ms. Nichols has pled all three elements of an FCA retaliation claim in her Second Amended Complaint.

To summarize, the Court finds that Ms. Nichols has failed to allege protected activity for: (1) the November and December 2018 internal complaints about creating medical records, and (2) the January 2019 meeting about study concerns. Thus, those claims must be dismissed. Additionally, the Court finds that Ms. Nichols has failed to allege that Baylor had notice that Ms. Nichols was engaged in protected activity for the following alleged activities:

- the December 2018 report alleging negligence and mismanagement;

- the January and February 2019 reports repeating the negligence and mismanagement concerns;

- the late February 2019 report related to misinformation being given to Baylor's IRB; and

- the February 2019 OHRP report.

Thus, these claims must also be dismissed. Moreover, because the Court has previously provided Ms. Nichols a chance to amend her complaint, for all those claims that are dismissed, the Court dismisses with prejudice.

However, for the remaining three allegations—the June 2018 and February 2019 double-billing reports, the February 2019 FDA report, and the December 2018 report concerning the

temperature of specimens—the Court finds that Ms. Nichols has adequately pled all three elements of an FCA retaliation claim.

A.      *Protected Activity*

In its first order, the Court held "that the internal reports concerning the alleged statutory noncompliance do not constitute protected activity under the FCA." Doc. 14, Mem. Op. & Order, 7. The Court reasoned that although "the basis for an actual FCA claim can be a false certification of compliance with federal requirements for funding," "Ms. Nichols fails to allege that the reason she reported the statutory noncompliance was that it constituted fraud against the federal government." *Id.* at 8; *see also Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 68 (D.C. Cir. 2008) (noting that the plaintiff's "investigation was into mere regulatory noncompliance and did not concern false or fraudulent claims as it must to support a retaliation claim . . . .") (citations and quotation marks omitted). And because the FDA report repeated Ms. Nichols concerns about statutory noncompliance, the Court found that Ms. Nichols did not plead protected activity as to this report either. Doc. 14, Mem. Op. & Order, 9–10.

Here, the Court finds that Ms. Nichols has failed to allege protected activity as it pertains to the November and December 2018 internal complaints about creating medical records, as well as the January 2019 meeting about study concerns. Those claims, therefore, must be dismissed. However, the Court finds that Ms. Nichols has pled that she engaged in protected activity for the December 2018 report of alleged "negligence and mismanagement," the late February 2019 report concerning Baylor's IRB, and the FDA report. Thus, for those claims, the Court will next move to analyze whether Ms. Nichols pleads that Baylor had notice of her protected activity.

<u>1.</u>     <u>The November and December 2018 internal complaints about creating medical records</u>

Baylor argues that the allegations regarding the November and December 2018 internal complaints should be dismissed because Ms. Nichols's Second Amended Complaint "alleges no new facts related to these allegations . . . ." Doc. 16, Def.'s Mot., 9.

The Court agrees. The allegations in the Second Amended Complaint regarding the November and December 2018 internal complaints are identical to those made in the First Amended Complaint (FAC). *Compare* Doc. 15, SAC, ¶ 14 *with* Doc. 8, FAC, ¶ 14. Thus, these internal complaints in the Second Amended Complaint suffer from the same defect as those in the First Amended Complaint: they do not "show that [Ms. Nichols] was 'motivated by a concern regarding fraud against the government.'" Doc. 14, Mem. Op. & Order, 9 (quoting *United States ex rel. Johnson v. Raytheon Co.*, 395 F. Supp. 3d 791, 798 (N.D. Tex. 2009)). Additionally, Ms. Nichols's arguments in her response to the motion to dismiss regarding this report mirror those that were unsuccessful when the Court considered Baylor's first motion to dismiss, in that Ms. Nichols does not show how these allegations were themselves "motivated by a concern that the noncompliance was defrauding the government." Doc. 14, Mem. Op. & Order, 8; *compare* Doc. 17, Pl.'s Resp., 4–5 *with* Doc. 12, Pl.'s Resp., 4–5.

Accordingly, Baylor's motion to dismiss based on the November and December 2018 internal reports is **GRANTED**.[2]

_____

[2] The Court notes that in its previous order, it held that Ms. Nichols failed to adequately plead that "Baylor would have notice that Ms. Nichols was engaged in protected activity when she reported her concerns about statutory noncompliance" internally to Baylor. Doc. 14, Mem. Op. & Order, 15. Because Ms. Nichols did not amend her First Amended Complaint as to the November and December 2018 internal reports, she has failed to allege that Baylor had notice of protected activity. This is another ground upon which Ms. Nichols's claim based on these allegations are dismissed.

<u>2.</u>     <u>January 2019 meeting about study concerns</u>

The same goes for the January 2019 meeting Ms. Nichols had with Ms. Fox and Kriss Gamez. *See* Doc. 15, SAC ¶¶ 9–31. These allegations are exactly the same as they appear in the First Amended Complaint, see Doc. 8, FAC ¶¶ 29–30, and therefore still do not allege protected activity. *See* Doc. 14, Mem. Op. & Order, 9. And as the Court notes in footnote two with respect to the November and December 2018 reports, because Ms. Nichols failed to amend her First Amended Complaint as to the January 2019 meeting, she has failed to allege Baylor had notice of any protected activity related to the January 2019 meeting. This is another ground for dismissal. Accordingly, Baylor's motion to dismiss based on the January 2019 meeting is **GRANTED**.

<u>3.</u>     <u>The December 2018 report of alleged "negligence and mismanagement" and the late February 2019 report regarding Baylor's IRB</u>

Baylor also seeks dismissal of Ms. Nichols's claim based on these allegations insofar as it relies upon lack of protected activity. Baylor argues that "[Ms. Nichols's] reworded allegation . . . would require [Baylor] . . . to become proficient in mindreading . . ." Doc. 16, Def.'s Mot., 10. Additionally, Baylor explains that Ms. Nichols "never communicated the basis for her concern to [Baylor]." *Id.* at 10.

"[A] protected activity is one motivated by a concern regarding fraud against the government." *Raytheon Co.*, 395 F. Supp. 3d at 798 (internal quotation marks and citation omitted). The protected-activity prong, therefore, focuses on the internal motivations of a plaintiff. It is the second element of a retaliation claim—the notice element—that goes to whether the plaintiff's internal motivations were externally evident. *See United States ex. rel. George v. Boston Sci. Corp.*, 864 F. Supp. 2d 597, 603–04 (S.D. Tex. 2012) ("[I]f an employee wants to impute knowledge to the

employer for purposes of the second prong of the analysis, he must specifically tell the employer that he is concerned about possible fraud." (alterations and internal quotations omitted) (quoting *United States ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 105 (D. Conn. 2006))).

Therefore, Baylor's arguments here lend themselves more so to lack of notice, not protected activity. Because Baylor acknowledges that Ms. Nichols now alleges that these internal reports were motivated by a concern about fraud against the government, see Doc. 16, Def.'s Mot., 9–11, the Court will apply Baylor's arguments here when considering below whether Ms. Nichols sufficiently pleads notice. Accordingly, the Court **DENIES** Baylor's motion to dismiss on this basis.

4.   The FDA report

Baylor also seeks dismissal of the FDA report allegation. Baylor argues that the e-mail that notified Baylor of Ms. Nichols's report does not raise a concern about fraud against the government. Doc. 16, Def.'s Mot., 11. But like above, this reads more like a notice argument. In fact, Baylor admits that Ms. Nichols now alleges "'that she had reported the studies to the FDA due to Baylor's continued noncompliance with NIH protocols that were resulting in fraud against the government.'" *Id.* at 6 (quoting Doc. 15, SAC, ¶ 36).

Ms. Nichols does allege that her concern was based on fraud against the government. *See also* Doc. 15, SAC, ¶¶ 35–36 (mentioning how she reached out to the FDA in part because of concern about fraud against the government). And because she alleges that her concern was based on fraud, Ms. Nichols has plausibly alleged the first element of a retaliation claim. *See Raytheon Co.*, 395 F. Supp. 3d at 798. Accordingly, Baylor's motion to dismiss the claim based on the FDA report on protected-activity grounds is **DENIED**. As mentioned above, the Court will consider Baylor's protected-activity arguments when analyzing whether Ms. Nichols sufficiently pleads notice.

B.     *Notice*

As the Court explained in its first order, it is not enough for Ms. Nichols to plead that she was engaged in protected activity; Ms. Nichols must also "plead that Baylor knew she was engaging in protected activity." Doc. 14, Mem. Op. & Order, 12 (citing *Kaner*, 641 F. App'x at 393). The Court concluded that "even if the reports [concerning statutory noncompliance and the report to the FDA] were protected activities, Baylor did not receive proper notice of their protected status." *Id.*

Although "no magic words—such as illegal or unlawful—are necessary to place the employer on notice of protected activity," *Jamison v. Fluor Fed. Sols.*, 2017 WL 3215289, at *9 (N.D. Tex. July 28, 2017) (quotation marks and citation omitted), "there must be something the employee says or does that gives the employer a reasonable basis for believing that litigation is a possibility." Doc. 14, Mem. Op. & Order, 13.

1.     The December 2018 report of alleged "negligence and mismanagement" and the January and February 2019 meetings about the report

As to these allegations, Baylor argues that Ms. Nichols has "failed to assert any new factual allegations regarding placing [Baylor] on *actual* notice that any alleged motives she had to make any reports [were] based on a concern about fraud against the government." Doc. 16, Def.'s Mot., 13 (emphasis in original). In other words, Baylor is arguing that even if Ms. Nichols solved the insufficiencies of her complaint as to first element of a retaliation claim—protected activity—she has done nothing to resolve the insufficiencies in her complaint as to the second element, notice.

In response, Ms. Nichols restates her arguments from the first motion to dismiss and fails to respond to Baylor's argument that she has not alleged additional facts that solve the notice issue. *Compare* Doc. 17, Pl.'s Resp., 8–9, *with* Doc. 12, Pl.'s Resp., 8–10.

The Court agrees with Baylor. Although the Second Amended Complaint might have solved insufficiencies as to the first element of the retaliation claim based on these internal complaints, Ms. Nichols has not added additional factual allegations in her Second Amended Complaint that make it plausible that Baylor knew she was engaging in protected activity. For example, the only new factual allegation concerning the December 2018 report is one sentence at the end of paragraph 26, in which Ms. Nichols alleges that she "decided to report these federal rule violations out of concern that Baylor's noncompliance with FDA and NIH rules was defrauding the government and jeopardizing patient safety." Doc. 15, SAC, ¶ 26; *compare with* Doc. 8, FAC, ¶ 25. This additional allegation does not show how Baylor would have had notice of Ms. Nichols's motivation. *See* Doc. 14, Mem. Op. & Order, 13 (explaining that to satisfy the notice prong of a retaliation claim, the employee "must specifically tell the employer that he is concerned about possible fraud") (quoting *George*, 864 F. Supp. 2d at 608).

And Ms. Nichols's allegations related to the January and February 2019 meetings with Baylor management concerning negligence and mismanagement are the same as those in the First Amended Complaint. *Compare* Doc. 15, SAC, ¶¶ 27–31 *with* Doc. 8, FAC ¶¶ 26–30. The Court previously held that the First Amended Complaint did not allege facts that put Baylor on notice of this protected activity. *See id.* at 15 (dismissing all internal complaints about statutory noncompliance and mismanagement on the grounds of lack of notice). Accordingly, Baylor's motion to dismiss Ms.

Nichols's claim based on the December 2018 report and the meetings in January and early February 2019 concerning the report is **GRANTED**.

2.    Late February 2019 report related to IRB Studies

The same can be said of the late February 2019 report related to the IRB studies. This report is related to the allegation in paragraph 26 of the Second Amended Complaint—dismissed above—in which Ms. Nichols alleges that Baylor was forcing regulatory specialists "to submit incomplete and inaccurate information to Baylor's [IRB]." *See* Doc. 15, SAC, ¶ 26; ¶ 33 ("Later in February 2019, [Ms. Nichols] asked that Ms. Fischer review the above study's application to Baylor's IRB as it was incorrect and the information leading the IRB to approve the study was false."). This is the same allegation from the First Amended Complaint that the Court previously held was insufficient to put Baylor on notice of Ms. Nichols's protected activity. *See* Doc. 14, Mem. Op. & Order, 15; *compare* Doc. 15, SAC, ¶ 33 *with* Doc. 8, FAC, ¶ 32.

Accordingly, Baylor's motion to dismiss Ms. Nichols's claim premised on the late February 2019 report related to the IRB studies is **GRANTED**.

3.    FDA complaint

Next, Baylor seeks dismissal of the retaliation claim based on the February 2019 FDA complaint. Baylor acknowledges that Ms. Nichols now alleges that she "specifically referenced a concern about fraud against the government" when she notified Baylor of her FDA report. Doc. 16, Def.'s Mot., 11. Baylor is right—Ms. Nichols does allege that she emailed Baylor to tell it that her FDA report was "due to Baylor's continued noncompliance with NIH protocols that were resulting in fraud against the government." Doc. 15, SAC, ¶ 36.

However, Baylor argues that Ms. Nichols's allegation "is patently and demonstrably false," and points the Court to the entire text of the e-mail, attached in Baylor's Appendix in Support of its First Motion to Dismiss. Doc. 16, Def.'s Mot., 11 (citing Doc. 10, Def.'s App., 6–8). Baylor argues that the entire email demonstrates that Ms. Nichols did not reference her fraud-based concerns to Baylor. *Id.*

Ms. Nichols responds by claiming that the entire email chain shows that Ms. Nichols told Baylor that "she had been contacted numerous times by compliance and criminal investigators, and that they wanted to discuss inaccuracies in Baylor's processes." Doc. 12, Pl.'s Resp., 7 (citing Doc. 10, Def.'s App., 6). To Ms. Nichols, then, she made it clear to Baylor that she had reported Baylor's alleged wrongdoing, "for which governmental and criminal investigating had commenced." *Id.*

Baylor's reply to Ms. Nichols's argument is that, still, the e-mail chain does not support Ms. Nichols's contention of notice. Doc. 18, Def.'s Reply, 4.

The Court concludes that, at this time, it cannot dismiss the allegation concerning the FDA report on notice grounds. First, the Court notes that it can most likely consider the e-mail in this order. *See Collins v. Morgan Stantley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (explaining how documents "attached[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim"). But because the parties, namely Baylor, have neither raised nor briefed this issue, the Court will not make that conclusion.

Even if the Court could consider the email chain, Baylor runs into an issue because this case is at the motion-to-dismiss stage. Specifically, the Court "must construe the allegations [in the

complaint] in the light that is most favorable to the plaintiff." *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007).

Here, Ms. Nichols *does* allege that she told Baylor that she reported Baylor's noncompliance to the FDA because she thought the protocols "were resulting in fraud against the government." Doc. 15, SAC, ¶ 36. This allegation was not in the First Amended Complaint. *See* Doc. 8, FAC, ¶ 35. Viewing the email in the light most favorable to Ms. Nichols, it could support her allegations of notice. Ms. Nichols's email notes that she had been contacted by both an FDA "compliance officer" and a "criminal investigator." *See* Doc. 10-1, Pl.'s App. to First Mot. to Dismiss, 6. Thus, the Court concludes that Ms. Nichols has sufficiently alleged that Baylor was "put on notice that litigation [was] a 'reasonable possibility'" due to the FDA report. Doc. 14, Mem. Op. & Order, 13 (quoting *George*, 664 F. Supp. 2d at 608).

Accordingly, Baylor's motion to dismiss the claim based on the FDA complaint because of a lack of notice is **DENIED**.

### 4. OHRP Report

In the Second Amended Complaint, Ms. Nichols alleges that in February of 2019, she made a report to OHRP similar to the one she made to the FDA. Doc. 15, SAC, ¶ 35. Baylor notes that "nowhere in the [Second Amended Complaint] does [Ms. Nichols] contend she reported to anyone at [Baylor] that she made a report to the OHRP." Doc. 16, Def.'s Mot., 6 n.8. Baylor thus seeks dismissal of Ms. Nichols's claim based on the OHRP allegation. *See id.* Ms. Nichols does not respond to this argument, and the Court notes that although Ms. Nichols has alleged additional facts that pertain to her motivation in sending OHRP a report, she has not alleged additional facts regarding

notice to Baylor. *Compare* Doc. 15, SAC, ¶ 35 *with* Doc. 8, FAC, ¶ 34. Accordingly, Baylor's motion to dismiss Ms. Nichols's claim based on the OHRP allegation is **GRANTED**.

C.    *Retaliation*

Only three bases of Ms. Nichols's cause-of-action remain: (1) the June 2018 and February 2019 double-billing reports; (2) the December 2018 report regarding specimen temperature; and (3) the February 2019 FDA Complaint. Ms. Nichols believes that her suspension and termination was a result of these reports. Doc. 15, SAC, ¶¶ 64–65.

The third element of a retaliation claim is causation—Ms. Nichols must plead that she "was discharged because she was engaged in protected activity." *Thomas*, 517 F. App'x at 262 (citation omitted). "[T]he employee must allege that the employer's 'retaliation was motivated by the protected activity.'" *Mackey v. Fluor Intercont'l*, 2015 WL 6125984, at *4 (S.D. Tex. Oct. 16, 2016 (quoting *George*, 864 F. Supp. 2d at 609). Baylor believes that Ms. Nichols has failed to sufficiently plead this element of her claim in regards to all of the bases for her cause of action. Doc. 16, Def.'s Mot., 13–14. Because many of those bases have already been dismissed, the Court will discuss only those arguments related to the allegations that have yet to be dismissed.

With respect to the June 2018 and February 2019 double-billing reports, Baylor notes that Ms. Nichols has alleged that she raised the report with Ms. Lloyd, Ms. Smith and Ms. Chionh in June of 2018, and Ms. Fischer and Ms. Estrada in February of 2019. *Id.* at 14 (citing Doc. 15, SAC, ¶¶ 7, 32). Baylor argues that because Ms. Nichols fails to allege that these individuals had any input in, or even knew of, Baylor's decision to pause and then terminate Ms. Nichols's employment, she has failed to plead causation. *Id.* at 15.

With respect to the December 2018 report regarding the temperature of specimens, Baylor notes that Ms. Nichols alleged that she told Ms. Estrada, Ms. Gamez, and Ms. Fox about this alleged fraud. *Id.* (citing Doc. 15, SAC ¶¶ 18, 46). But because Ms. Nichols does not allege that any of these individuals were involved in Baylor's employment decisions, Baylor argues, she has failed to plead causation for this report as well. *Id.*

Baylor repeats this same argument as it relates to the FDA report. *See id.* at 16. Baylor notes that Ms. Nichols copied Ms. Fischer, Ms. Fox, and Ms. Estrada on the email notifying Baylor as to her FDA report, but believes that none of these individuals were alleged to have been involved in the decision to pause and then terminate Ms. Nichols's employment. *Id.* (citing Doc. 10, Def.'s App., 6).

The Court disagrees with Baylor, and concludes that Ms. Nichols has sufficiently pled causation. The Fifth Circuit has explained that in an FCA retaliation case, "the employee must first establish a prima facie case of retaliation by showing: (1) that [s]he engaged in protected activity; (2) that the employer knew about the protected activity; and (3) retaliation because of the protected activity." *Garcia v. Prof'l Contract Servs, Inc.* 938 F.3d 236, 241 (5th Cir. 2019) (citations omitted). After the plaintiff does so, the burden shifts to the employer, and if the employer has a "benign reason" for the alleged retaliatory action, the burden falls back onto the employee to show that the reason is "a pretext for retaliation." *Id.* (citation and quotation marks omitted). This is known as the "*McDonnell Douglas* framework." *See id.* Although the prima facie case need only be proven at the summary judgment stage, the prima facie case is helpful in analyzing the sufficiency of a complaint on a motion to dismiss. *See Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 245 (5th Cir. 2017) (per curiam) (explaining, in the context of a Title VII retaliation claim, that the elements of a prima

facie case of retaliation "are helpful in analyzing the sufficiency of [a] complaint]); *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) (same).

And "[a]t the prima facie case, a plaintiff can meet [her] burden of causation simply by showing close enough timing between [her] protected activity and [her] adverse employment action." *Garcia*, 938 F.3d at 243. In terms of this "[t]emporal proximity," the Fifth Circuit "ha[s] even suggested that four months is close enough," while "[t]he Supreme Court has [] approvingly cited a case that held three months was insufficient to show causation." *Id.* at 243 (citations omitted). In *Garcia*, the time between the alleged protected activity and the retaliatory measures taken by the employer was two-and-one-half months. *Id.* The Fifth Circuit thus concluded that "the district court erred in holding that [the plaintiff] failed to establish his prima facie case." *Id.*

Here, Baylor's alleged retaliatory actions occurred from late February through March of 2018. Doc. 15, SAC, ¶¶ 40–53. The alleged reports that remain as bases for Ms. Nichols's cause of action occurred in June 2018 (the original double-billing report), in December 2018 (the temperature-of-specimens report, specifically December 19, 2018, see *id.* ¶ 17), and in February 2019 (the second double-billing and FDA reports). In fact, Ms. Nichols alleges that she repeated her December 2018 concerns regarding temperature of specimens to Baylor management between the "pause" in her employment and her eventual termination. Doc. 15, SAC, ¶ 51. Thus, all but the June 2018 report occurred within the *Garcia*-approved two-and-a-half months of when the alleged retaliatory acts commenced. *See Garcia*, 938 F,3d at 243.

As to the June 2018 double-billing report, see Doc. 15, SAC, ¶¶ 6–7, this report was, of course, outside the three or four-month limit implied in *Garcia*. *See* 938 F.3d at 243. However, because this report is substantively similar to the February 2019 double-billing report—which

immediately preceded the commencement of the alleged adverse employment actions—it is plausible to conclude that Baylor's adverse employment decisions were, at least in part, due to Ms. Nichols's continual concerns about double-billing. *See Andrade v. Teichroeb*, 341 F. Supp. 3d 681, 685 (N.D. Tex. 2018) ("A claim is facially plausible when it asserts facts that allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

Baylor argues in its reply that Ms. Nichols must specifically plead "the individuals to whom [s]he claimed [s]he complained were involved in [her] termination . . . ." Doc. 18, Def.'s Reply, 7. Baylor believes that a "collective pleading" is insufficient to establish a casual connection, as "the identity of the wrongdoer is significant and required." *Id.* (citation and quotation marks omitted).

Baylor relies primarily are two cases for these propositions: *Jamison v. Fluor Federal Solutions*, 2019 WL 460304 (N.D. Tex. Feb. 6, 2019), *appeal docketed*, No. 19–10278 (5th Cir. Mar. 8, 2019), and *Raytheon*, 395 F. Supp. 3d 791. *See* Doc. 18, Def.'s Reply, 6–7. But these cases can be distinguished. The court in *Jamison* did conclude that causation was not pled because the plaintiff had failed to allege that the individuals to whom the plaintiff raised concerns to were "involved in [the plaintiff's] termination or that the person who made the decision . . . was aware of [the plaintiff's] protected activity." 2019 WL 460304, at *9. But the context of the court's reasoning matters. In *Jamison*, there were two separate employers. *See id* at *3. The court found that notice of protected activity could not be imputed to the defendant, as the plaintiff had complained to people at another company. *See id.* at *9. Baylor states that this fact does not change this Court's analysis, but does not explain why. Doc. 18, Def.'s Reply, 7.

The Court disagrees with Baylor, and believes that the facts of *Jamison* are distinguishable. The court in *Jamison* explained that "the retaliator's identity is significant *because* [the plaintiff] has failed to plead sufficient facts from which this Court could impute liability for actions taken by [the first company] to [the defendant.]" *Jamison*, 2019 WL 460304, at *9 (emphasis added). Here, there is no such issue. Thus, it is plausible to conclude that those who made the adverse employment decisions were told of Ms. Nichols's activity, regardless of whether Ms. Nichols directly reported her concerns to them or not. This is especially plausible given the temporal proximity of Ms. Nichols's protected activity to the adverse employment decisions.

For similar reasons, *Raytheon* can also be distinguished. First, the court in *Raytheon* relied on *Jamison* when it concluded that "collective pleading is insufficient to plausibly state a causal connection between protected activity and termination." *See* 395 F. Supp. 3d at 799 (citing *Jamison*, 2019 WL 460304, at *9). Second, the complaint in *Raytheon* was general in nature—the plaintiff "allege[d] neither who actually terminated him nor whether the person who terminated him was aware of his 'protected activity.'" *Id.* Here, in contrast, Ms. Nichols's specifically mentions who she reported her allegations to, see, *e.g.*, Doc. 15, SAC, ¶¶ 6–7, 37, and who made—or at least told her of—the adverse employment decisions. *See id.* ¶¶ 37–38, 53–54. And as explained above, it has already been sufficiently alleged that Baylor as an entity was aware of some of Ms. Nichols's protected activity.[3]  *See supra* Section III.B.

_____

[3] Moreover, even assuming that collective pleading is insufficient to demonstrate causation, Ms. Nichols's factual allegations probably do not constitute collective pleading. There are allegations that those to whom Ms. Nichols's reported her concerns were engaged in the adverse employment decisions. For example, Ms. Nichols alleges that she spoke to Ms. Gamez about her FDA report. Doc. 15, SAC, ¶ 37. Ms. Gamez was the one who told Ms. Nichols about Baylor's subsequent "pause" of her employment and her termination. *Id.* ¶¶ 38, 55–56. Even if Ms. Gamez was simply relaying Baylor management's decision on Ms. Nichols's employment to Ms. Nichols herself, her entwinement in those decisions would be sufficient grounds for denial. Regardless, the Court finds Baylor's argument legally unavailing.

Accordingly, Baylor's motion to dismiss Ms. Nichols's retaliation claims based on the June 2018 and February 2019 double-billing reports, the December 2018 report regarding temperature of specimens, and the February 2019 FDA report is **DENIED**.

D.   *Whether to Grant Leave to Amend*

Baylor asks the Court to dismiss the Second Amended Complaint with prejudice, as this Court has already given Ms. Nichols an opportunity to replead. Doc. 16, Def.'s Mot., 16. Ms. Nichols asks the Court to grant her leave to file a third amended complaint under Federal Rule of Civil Procedure 15(a)(2). Doc. 17, Pl.'s Resp., 10.

As there are allegations that have withstood this order, the Court does not dismiss the Second Amended Complaint in its entirety. But as to the claims that have been dismissed in this order, the Court agrees with Baylor that they should be dismissed with prejudice.

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading only if the opposing party agrees—which is not the case here—or with the court's permission. "The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). But "[a] court is justified in denying leave to amend when a plaintiff fails to cure deficiencies by amendments previously allowed[.]" *Jamison*, 2019 WL 460304, at *10 (quotations and citations omitted). Here, the Court has already given Ms. Nichols the opportunity to file a second amended complaint to cure the deficiencies the Court identified in its first order—specifically, the deficiencies as to the protected activity and notice elements of her FCA retaliation claim. Doc. 14, Mem. Op. & Order, 17. The Court was explicit in what it viewed as deficiencies in the First Amended Complaint. *See, e.g.*, *id.* at 8–10 (insufficiencies in pleading protected activity); *id.* at 12–15 (insufficiencies in pleading notice).

However, on her second try, Ms. Nichols has either failed to cure those insufficiencies, or has failed to even address them. For example, the allegations in the Second Amended Complaint regarding the November and December 2018 internal complaints are identical to those made in the First Amended Complaint. *Compare* Doc. 15, SAC, ¶ 14 *with* Doc. 8, FAC, ¶ 14. And the same can be said for the Second Amended Complaint's factual allegations concerning Ms. Nichols's January 2019 meeting with Ms. Fox and Ms. Gamez. *Compare* Doc. 15, SAC, ¶ 31 *with* Doc. 8, FAC, ¶ 30. As for those allegations that Ms. Nichols added to the Second Amended Complaint to show she engaged in protected activity, they do not demonstrate that Baylor had notice. *Compare* Doc. 15, SAC, ¶ 26; *with* Doc. 8, FAC ¶ 25; *compare* Doc. 15, SAC, ¶ 33 *with* Doc. 8, FAC, ¶ 32; *compare* Doc. 15, SAC, ¶ 35 *with* Doc. 8, FAC, ¶ 34. Thus, "[Ms. Nichols] has failed to cure these deficiencies or otherwise plead sufficient facts to support [those] claim[s] of retaliation under the FCA." *Jamison*, 2019 WL 460304, at *10. Accordingly, "[t]he Court presumes that [Ms. Nichols] has pleaded [her] best case at this point, and, therefore, will not allow h[er] another opportunity" to attempt to solve the repeated deficiencies in her complaint. *Id.*

Thus, for the claims that the Court has granted the motion to dismiss, it is **WITH PREJUDICE**.[4]

---

[4] Moreover, the Court finds that Ms. Nichols has not properly sought leave to file an amended complaint under Rule 15(a)(2). Although "[a] formal motion is not always required," the party seeking leave must "set forth with particularity the grounds for the amendment and the relief sought." *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Id.* (internal citations omitted) (alterations in original) (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)). In her response, Ms. Nichols did not set forth with particularity the grounds for amendment. *See* Doc. 17, Pl.'s Resp., 10 ("Should the Motion be granted, [Ms.] Nichols requests leave to file a third amended complaint pursuant to Rule 15(a)(2) to cure any deficiencies that the Court determines remain.") However, even if this Court were to construe Ms. Nichols's request as proper, for the reasons already stated, the motion would be denied.

# IV.

# CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Baylor's Second Motion to Dismiss (Doc. 16). To the extent that the Court grants the motion, it is **WITH PREJUDICE**. For clarity, the Court finds that Ms. Nichols has stated a claim based on the: (1) June 2018 and February 2019 double-billing reports; (2) February 2019 FDA report; and (3) December 2018 report regarding the temperature of specimens.

**SO ORDERED.**

**SIGNED: March 10, 2020**.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE